[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Toledo Municipal Court.
This action was originally instituted by appellant, Real Flo Properties, an Ohio general partnership, on a landlord's complaint. Appellant alleged that appellee, Earnestine Kelly, was in default on her rent payments and requested restitution of the rented premises located at 710 Ashwood, Toledo, Ohio.
In her answer and counterclaim, appellee contended that she signed two written agreements on July 19, 1995. The documents offered into evidence at trial revealed that one contract is captioned a "Lease-Option Agreement" and the second is captioned "Offer To Purchase." The Lease-Option Agreement is for a term of five years, with monthly rental payments of $300 and provides the lessee with an opportunity to exercise an option to purchase the rented premises. The cost of the option is listed as $900. Upon exercising this option, the lessee is credited $12.50 per month toward the purchase price of the property.
Turning to the contents of the Offer To Purchase, the boilerplate form used by appellant states that it is a purchase offer and neither incorporates by reference the Lease-Option Agreement nor is it incorporated by reference into that agreement. The contract lists the total purchase price of $19,000, indicates that $1,200 is deposited on the purchase price leaving a $17,800 mortgage. The form also declares that when the offer is accepted by seller "it shall constitute a binding contract for the purchase and sale of said property."
Approximately one-quarter of the way down the document the words "Lease/Option" are hand-printed; these words are not initialed or dated. They are neither part of a sentence nor do they appear to have any relationship to the rest of the document. In a separate provision, "L/O" appears as the amount of the mortgage required under the contract. Appellant alleged that these initials also stand for the words "lease option," and presumably render the document a contract memorializing the fact that Kelly bought an option to purchase the Ashwood property.
Kelly maintained that she exercised her option to purchase the rented premises on the same day, July 19, 1995, that she entered into the lease for the property at 710 Ashwood. She submitted the Offer to Purchase agreement as a land installment contract for the purchase of the Ashwood property for a price of $19,000. She asked the court to dismiss the action against her and to enter a judgment:
 "declaring the parties' respective interests in the land installment contract and an order requiring plaintiff to furnish defendant with a statement of the principal and interest credited against the purchase price of the Property and the balance due under the land installment contract; that all costs of this action be assessed to plaintiff; and for such other and further relief as justice may require."
After a hearing, the magistrate who presided over the proceedings filed a report in which he determined that the document captioned "Offer to Purchase" was a land installment contract. The magistrate then added necessary omitted terms, for example, an interest rate on the original purchase price of the subject property. In addition, and among other things, he determined that appellee had paid $9,800 toward the purchase price. The magistrate further ordered appellant to convey the property to Kelly upon full payment of the purchase price. The trial court adopted the magistrate's report as its judgment.
On appeal, appellant presents one assignment of error, which reads:
 "THE TRIAL COURT ABUSED ITS DISCRETION, COMMITTED REVERSIBLE ERROR AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT FOUND THAT THE PARTIES HAD ENTERED INTO A LAND CONTRACT."
Initially, appellant contends that the document offered by Kelly does not fully comply with R.C. 5313.02(A), the statute that provides for the "minimum contents" of a land contract.
A land contract is defined by statute as an executory agreement which is not required to be performed within one year of the date of the agreement and "under which the vendor agrees to convey title in real property * * * to the vendee and the vendee agrees to pay the purchase payment in installments, while the vendor retains title to the property as security for the vendee's obligation." R.C. 5313.01.
R.C. 5313.02 lists the following items as the minimum contents of a land contract:
 "(A) * * *. The contract shall contain at least the following provisions:
 "(1) The full names and then current mailing addresses of all the parties to the contract;
 "(2) The date when the contract was signed by each party;
"(3) A legal description of the property conveyed;
"(4) The contract price of the property conveyed;
 "(5) Any charges or fees for services that are includable in the contract separate from the contract price;
"(6) The amount of the vendee's down payment;
 "(7) The principal balance owed,* which is the sum of the items specified in divisions (A) (4) and (5) of this section less the item specified in division (A) (6) of this section;
 "(8) The amount and due date of each installment payment;
 "(9) The interest rate on the unpaid balance and the method of computing the rate;
 "(10) A statement of any encumbrances against the property conveyed;
 "(11) A statement requiring the vendor to deliver a general warranty deed on completion of the contract, or another deed that is available when the vendor is legally unable to deliver a general warranty deed;
 "(12) A provision that the vendor provide evidence of title in accordance with the prevailing custom in the area in which the property is located;
 "(13) A provision that, if the vendor defaults on any mortgage on the property, the vendee can pay on that mortgage and receive credit on the land installment contract;
 "(14) A provision that the vendor shall cause a copy of the contract to be recorded;
 "(15) A requirement that the vendee be responsible for the payment of taxes, assessments, and other charges against the property from the date of the contract, unless agreed to the contrary;
 "(16) A statement of any pending order of any public agency against the property."
The purpose of R.C. Chapter 5313.02 is to protect the buyer by making specific information available in a land installment contract. Fannin v. Reagan (Nov. 9, 1995), Portage App. No. 94-P-0091, unreported; Hilton v. Tire Tread Development,Inc. (June 30, 1993), Portage App. No. 92-P-0053, unreported;Young v. Hodapp (Dec. 29, 1986), Butler App. No. CA 85-08-094, unreported. That is, it is not a weapon to be used by a vendor to void that contract. Consequently, we conclude that a document need not strictly comply with R.C. 5313.02(A) in order to be deemed an enforceable land installment contract. We therefore concur with the holding set forth in Shimko v. Marks (1993),91 Ohio App.3d 458.
In Shimko at 462, the Stark County Court of Appeals applied a standard of substantial compliance with the Statute of Frauds and the requirements of R.C. 5313.02 in order to decide that a receipt was a sufficient memorandum for the sale of real estate by land contract. The receipt did not satisfy each and every point listed in R.C. 5313.02(A). Rather, the Shimko court held the receipt substantially complied with the statute based on the inclusion of the date of execution, the address of the property conveyed, the agreed contract price of the property, the amount of the vendee's down payment, the balance owed, the amount of each installment payment and the interest rate on the unpaid balance. Id. Because, as stated previously, we find Shimko
persuasive, the issue before this court is whether some competent, credible evidence was offered to demonstrate substantial compliance with the statute. C.E. Morris Co. v. Foley Constr.
(1978), 54 Ohio St.2d 279, syllabus.
In the case before us, the Offer To Purchase contains the date of execution, the address of the property, the total purchase price, the amount of the down payment ($1,200), the principal still owed, the amount of the installment payment, a statement requiring the vendor to deliver a warranty deed and evidence of title and a statement as to the responsibility for taxes and assessments before "closing" and after "closing." The document does not state the interest rate on the unpaid balance. Despite the lack of a stated interest rate, we find, pursuant toShimko, some competent, credible evidence of substantial compliance with R.C. 5313.02(A).
Appellant also argues that the conduct of the parties in the years following the signing of the agreement was not consistent with a vendor/vendee relationship. At the trial of this matter, Earnestine Kelly testified that, upon purchasing the property at 710 Ashwood, she had the house re-carpeted, had repairs made to the furnace and attempted to repair the roof. She only learned that she was allegedly renting the premises at 710 Ashwood when she sought outside aid in accomplishing the roof repairs. At that time, and upon the advice of an attorney, she started to escrow her monthly payments, first with a bank and then with the clerk of the municipal court. It is undisputed that Kelly never missed an installment payment until that point. While admitting that she never directly paid taxes on the property, appellee stated she believed that they were part of the $300 monthly installment payment. She also testified that, at some point after the contract was signed, she was offered a mortgage through a company she believed to be associated with appellant, but was unable to take advantage of the offer. Therefore, some competent, credible evidence was offered at trial to show that Kelly acted as the purchaser of the property.
For all of the foregoing reasons, we find that the trial court did not err in determining that the document captioned "Offer To Purchase" was a an enforceable land contract. Appellant's sole assignment of error is found not well-taken.
The judgment of the Toledo Municipal Court is affirmed. Appellant, Real Flo Properties, is ordered to pay the costs of this appeal.
Melvin L. Resnick, J.
 James R. Sherck, J.
 Mark L. Pietrykowski, J.
CONCUR.
 _______________________________ JUDGE